### In re TRANSPORTATION SYSTEMS INTERNATIONAL, INC., Debtor.

Thomas G. LOVETT, Jr., Trustee, for the Bankruptcy Estate of Transportation Systems International, Inc., Plaintiff,

v.

WONDEROAST, Defendant.

See also 930 F.2d 625.

Thomas G. LOVETT, Jr., Trustee for the Bankruptcy Estate of Transportation Systems International, Inc., Plaintiff,

v.

SAILBOARD WAREHOUSE/WINDCATCHER, Defendant.

Thomas G. LOVETT, Jr., Trustee, for the Bankruptcy Estate of Transportation Systems International, Inc., Plaintiff,

v.

ANAGRAM INTERNATIONAL, INC., Defendant.

Bankruptcy No. 4–87–1952.
Adv. Nos. 4–89–292, 4–89–300 and 4–89–301.

United States Bankruptcy Court, D. Minnesota.

June 26, 1992.

Paul Taylor, Harris & Taylor, Bloomington, Minn., for plaintiff.

Brent W. Primus, Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above entitled matters came on for hearing on a motion for summary judgment by each of the defendants in the above entitled cases. Appearances were as follows: Paul Taylor for the Plaintiff and Brent Primus for each of the Defendants. This memorandum opinion shall serve as the Court's Findings of Fact, Conclusions of Law and Order for Judgment granting such motion for summary judgment.

## PROCEDURAL HISTORY

These three cases have identical procedural histories. In each case the plaintiff is Thomas G. Lovett, Jr., Trustee for the Bankruptcy Estate of Transportation Systems International, Inc. (hereinafter, "Lovett" and "TSI" respectively). TSI was engaged in the trucking business. Each of the defendants was a customer of TSI. Lovett commenced these proceedings, along with many others, to recover freight undercharges; *i.e.*, the difference between the rate that TSI had filed with the Interstate Commerce Commission (the "Commission") and the rate the parties had negotiated.

By separate orders, I referred all three cases to the Commission "for its determination of the reasonableness or unreasonableness of Transportation Systems International, Inc.'s rates, rules and practices and all other issues within the primary jurisdiction of the Interstate Commerce Commission." I then issued an order administratively closing the cases.

On February 5, 1992, the Commission issued a decision in which it found that TSI had no rates validly filed with it at the time of the transactions involved and thus was not entitled to rely on the filed rate doctrine at all. *Wonderoast, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Transportation Systems International, Inc.*, 8 I.C.C.2d 272 (February 5, 1992). In *Wonderoast*, the Commission interpreted its own regulations found in 49 C.F.R. § 1312.4(d), § 1312.10(a) and § 1312.27. 49 C.F.R. § 1312.27(e) provides that if a carrier refers to separate tariffs, the carrier must also participate in those tariffs. 49 C.F.R. § 1312.10(a) provides that "Powers of Attorney may be given by a carrier to a carrier or an agent for the purpose of publishing and filing tariffs." And, 49 C.F.R. § 1312.4(d) provides that a carrier may not participate in a tariff without executing a concurrence or power of attorney and furnishing it to the agent. It is undisputed that TSI did not comply with these regulations because, although it elected to rely on use of the National Motor Freight Carriers ("NMFC") tariffs, it failed to participate in those tariffs by providing NMFC with a concurrence or power of attorney.

Based on the Commission's decision in *Wonderoast*, the defendants in these cases now move for summary judgment.

## DECISION

Defendants assert that there are no genuine issues of material fact because the Commission has determined that the predicate upon which all filed rate cases are based (i.e., that there is a valid rate on file with the Commission) is not present and that without such a filed rate there can be no claim of an undercharge. Defendants assert that the Commission's decision in *Wonderoast* is consistent with established law and with prior decisions of the Commission. The decision in *Wonderoast* follows its previous decision in *Jasper Wyman & Son*, 8 I.C.C.2d 246 (January 29, 1992). In each of these cases the Commission considered the applicable regulations and reasoned that the intent of the regulations was to require the carriers to participate as well as attempt to use an agent's rates. Carriers are free to refer to rate schedules used by others, but they must take all the

steps required by the regulations to make that participation effective. Effective participation includes, according to the Commission regulations, the delivery of a concurrence which presumably is designed to give all parties notice of such concurrence and an idea of where and how to interpret the rate schedule.

Plaintiff makes two alternative responsive arguments. *First*, Lovett argues that the agency's interpretation of its own regulations is arbitrary and capricious and without a rational basis. *Second*, at the hearing the plaintiff urged that I should refer the cases back to the Commission for a determination of which rates should apply in the absence of a filed rate.

## ARBITRARY AND CAPRICIOUS

■ Where a matter is within the primary jurisdiction of an administrative agency and the agency has spoken, the decision should generally be honored. The standard of review "is a narrow one, deferential to the agency's interpretation of its own regulations and only permitting reversal if the agency action is without a rational basis." *Department of Social Serv. v. United States Dept. of Educ.*, 953 F.2d 372, 375 (8th Cir.1992) (quoting *Education Assistance Corp. v. Cavazos*, 902 F.2d 617, 622 (8th Cir.1990)).

With respect to its first argument, Plaintiff asserts that as a matter of law the Commission is not free to reject or fail to give force of law to rates which are technically deficient in their filing if they have been filed and accepted by the Commission. As support for this argument, plaintiff refers to the cases of *ICC v. America Trucking Associations, Inc.*, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984); *Davis v. Portland Seed Co.*, 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762 (1924); *Berwind–White Coal Mining Co. v. Chicago and E. R.R.*, 235 U.S. 371, 35 S.Ct. 131, 59 L.Ed. 275 (1914); and *Genstar Chemical Ltd. v. ICC*, 665 F.2d 1304 (D.C.Cir.1981). The Commission addressed and distinguished these cases in its decisions in *Wonderoast* and *Jasper Wyman*. Furthermore, two district court judges in Minnesota have recently

rejected such arguments. *F.P. Corporation v. Twin Modal, Inc.*, CIV 4–91–624 (D.C.Minn. May 4, 1992, Rosenbaum, J.); *Atlantis Express, Inc., v. Associated Wholesale Grocers, Inc.*, CIV 4–90–254, 1992 WL 195426 (D.C.Minn. March 6, 1992, Doty, J.). I agree with the Commission, Judge Rosenbaum and Judge Doty in my rejection of the Plaintiff's argument that the Commission's decision contradicts prior rulings of the courts with respect to rates that have been accepted for filing and not challenged by the Commission.

Lovett's other arguments going to the reasonableness of the Commissions' actions need little attention. I find nothing arbitrary or capricious in the Commission's promulgation of a regulation which requires the filing of a concurrence or power of attorney; the Commission's decision is consistent, rather than inconsistent, with prior decisions; and, TSI did not substantially comply with the regulations.

TSI has simply failed to comply with a validly promulgated regulation which is not facially unreasonable and which has not been applied in an unreasonable or arbitrary fashion.

## REFERRAL

■ I also reject TSI's argument that these matters should be referred back to the Commission for a determination of which rates should apply in absence of a filed rate. The basis of TSI's argument is that by failing to determine the appropriate rate, the Commission side-stepped one of the issues specifically referred to it by my original referral orders, which sent these cases to the Commission for its "determination of the reasonableness or unreasonableness of [TSI's] rates, rules and practices and all other issues within the primary jurisdiction of the [Commission]."

However, I do not interpret my referral order as broadly as TSI. While the order specifically mentions rate reasonableness and all other issues within the Commission's primary jurisdiction, the order is limited by the scope of the case before me. The complaint in these cases is one for the collection of undercharges, and TSI's theo-

ry throughout these proceedings has been that it is entitled to collect the full amount due according to its filed rate. Accordingly, the Commission determined, as it explained in footnote 32 of the *Jasper Wyman* case, that in absence of a valid filed rate, a carrier has no basis for collecting undercharges. *See Wonderoast* at 278; *Jasper Wyman* at n. 32. TSI has now substantially shifted its theory of recovery and asserts that it is entitled to collect a "reasonable rate" in excess of the negotiated rate. That issue was not before me at the time of referral, and the Commission's failure to address such issue does not justify a second referral.

Furthermore, the only case cited by counsel for TSI in support of a new referral to the Commission is *Amoco Fabrics and Fibers Co. v. Pope, Trustee of the Estate of A.T.F. Trucking, Inc.*, (available on WESTLAW, T–TRAN–ICC database) 1992 MCC LEXIS 17 (1992). I find no authority in that case for now referring this issue to the Commission, and counsel has been given adequate time to present a written memorandum on that issue but has failed to do so.

ACCORDINGLY, IT IS HEREBY ORDERED: the defendants' motions for summary judgment in these matters are GRANTED, judgment shall be entered in favor of the defendants, and the plaintiff shall take nothing by way of its complaints.

LET JUDGMENT BE ENTERED ACCORDINGLY IN EACH CASE.